UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID R. OJA,

        Plaintiff,

v.

JANET NAPOLITANO, Secretary, U.S.
Department of Homeland Security, and
HILDA L. SOLIS, Secretary, U.S. Department
of Labor,

        Defendants.

                              /

Case No. 1:12-cv-727

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

The *pro se* plaintiff filed this action alleging numerous violations of federal law. This matter is now before the court on a motion to dismiss by defendant Hilda L. Solis, Secretary of the United States Department of Labor (docket no. 13). Defendant's motion is unopposed.

    **I.**    **Plaintiff's complaint**

Plaintiff has alleged claims against two federal agencies, the United States Department of Homeland Security ("DHS") and the United States Department of Labor ("DOL"), naming as defendants the Secretaries of those agencies, Janet Napolitano and Hilda Solis, respectively. *See* Compl. (docket no. 1). Plaintiff's allegations are reproduced below:

> 5. Plaintiff, David R. Oja, is a qualified individual with a disability within the meaning of the Americans with Disabilities Act of 1990 "ADA"; and the ["]Rehabilitation Act of 1973."
>
> 6. On or about, July 6,2009, Defendant hired Plaintiff as an employee.
>
> 7. In or about, July 17, 2009, Plaintiff injured and broke his Tibia and Tibia Plateau during United States Border Patrol Basic Training.

8. The Defendant Department of Homeland Security (Hereafter- DHS), Customs and Border Protection, United States Border Patrol (Hereafter-USBP), failed to provide adequate or competent treatment for Plaintiffs broken T[i]bia and Tibia Plateau.

9. On or about July 25, 2009, Plaintiff underwent surgery to repair the broken Tibia and Tibia Plateau, requiring (8) Eight screws and (2) Two pins, and was placed on temporary total disability from work.

10. The Plaintif[f] was sent back "home" to the state of Michigan, to undergo surgery and rehabilitation.

11. The Plaintiff, had an approved worker' [sic] compensation claim, with Defendant United States Department of Labor (Hereafter - DOL), Office of Workers' Compensation from the date of injury, July 17, 2009, through, October 2009.

12. After completion of his surgery, and prior to the date of his termination, Plaintiff returned to Defendant "DHS" to work from October 2009 through December 14, 2010.

13. Defendant(s) DHS and DOL, employed a rehabilitation nurse to "push" and induce the Plaintiff and Plaintiff's [physicians] to hurry and release the Plaintiff to "full duty."

14. Plaintiff was scheduled to return to the United States Border Patrol, class 960, to begin December 16, 2010, as an inducement to hurry to be released to "full duty."

15. Plaintiff continued to work "light duty" with the Defendant DHS, until he was terminated, two days prior to the start of USBP Class 960, was scheduled to begin on December 14, 2010, after being released to full duty.

16. Plaintiff requested that Defendant DHS "reasonably accommodate" him.

17. Defendants refused to reasonably accommodate Plaintiff.

18. Plaintiff has a permanent disability, making him disabled pursuant to the meaning of the ADA and the Rehabilitation Act, to the injured member that remains "compensable," with a lifetime impairment rating.

19. Plaintiff has (8) screws and (2) pins holding together his Tibia and Tibia [Plateau], it will require further treatment as it ages and does substantially limit one or more life activities creating a disability, as defined in the ADA, CFR 29, and the Rehabilitation Act of 1973.

>20. Plaintiff [sic] DOL, terminated the Plaintiff's workers' compensation benefits in violation of Federal [Employees] Compensation Act (Hereafter - FECA), the ADA, and the Rehabilitation Act of 1973.

Compl. at ¶¶ 5-20.

The complaint consists of two counts. In Count I, directed at both Secretary Nsolis and Secretary Napolitano, plaintiff alleged that his December 16, 2010 termination was not based on any medical justification, was discriminatory as to him, and violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq*. *Id.* at ¶¶ 25-26. In support of this claim, plaintiff alleged that from the time of his release to "Full Duty" until the day of his termination, plaintiff was capable of performing the duties of "several available suitable positions at the Defendants' facilities and/or completing the USBP Basic Training" and that he "attempted to be placed in available suitable positions at the Defendants' facilities." *Id.* at ¶¶ 22-23. Plaintiff alleged that defendants acted in a discriminatory manner by refusing to allow plaintiff to return to his former position or any other position because of his disability. *Id.* at ¶ 24. Plaintiff further alleged that his December 16, 2010 termination was not based on any medical justification, that he was terminated because of his disability, and that he was replaced by a non-disabled person. *Id.* at ¶¶ 25 and 27. While plaintiff alleged that defendant DOL terminated his workers' compensation benefits in violation of the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.*, his claims against the DOL involve alleged violations of the ADA and the Rehabilitation Act related to the termination of those benefits. *Id.* at ¶¶ 20 and 26.

In Count II, directed at Secretary Napolitano, plaintiff alleged that DHS violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and subjected him to race

discrimination in violation of the 14th Amendment, as actionable under 42 U.S.C. § 1983. *Id.* at ¶¶ 29-31. Specifically, plaintiff alleged that DHS discriminated against plaintiff on account of his race (white) and retaliated against him by, among other things: failing to provide an extension of probationary period as it did for other injured and/or disabled employees that were non-white; failing to provide reasonable accommodation to plaintiff while providing reasonable accommodation to non-white injured and/or disabled employees; inducing plaintiff to hurry to return to full duty in order to terminate him, while not inducing non-white injured and/or disabled employees; and terminating plaintiff's employment while finding appropriate positions and reasonable accommodations for non-white employees. *Id.* at ¶ 30.

Plaintiff's requested relief includes the following:

A. For all compensatory and punitive damages with respect to the statutory claims alleged and reincorporated herein, including past and future loss of earnings and benefits and loss of professional growth opportunities in a proper and adequate monetary amount, in an amount being just; [and]

B. Grant to plaintiff damages for emotional distress, humiliation and loss of self-esteem, the loss of life's pleasures, and loss of his ability to provide himself and his family with the earned rewards of excellence in his chosen profession[.]

Compl. at pp. 3-4.

## II. Defendant Solis' motion to dismiss for lack of jurisdiction

### A. Standard of review

Defendant Solis has moved to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted). Thus, "when

subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss." *Giesse v. Secretary of Department of Health and Human Services*, 522 F.3d 697, 702 (6th Cir. 2008).

"In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits." *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003). "However, where a defendant argues that the plaintiff has not alleged sufficient facts in her complaint to create subject matter jurisdiction, the trial court takes the allegations in the complaint as true." *Id. See, e.g., Little Traverse Bay Bands of Odawa Indians v. Great Spring Waters of America, Inc.*, 203 F.Supp.2d 853, 855 (W.D. Mich. 2002) (for a facial attack as to subject matter jurisdiction under Rule 12(b)(1), the district court must assume that plaintiff's allegations are true and must construe the allegations in a light most favorable to plaintiff). In resolving motions to dismiss, the court has a duty to construe a *pro se* complaint liberally. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Kent v. Johnson*, 821 F. 2d 1220, 1223-24 (6th Cir. 1987).

Here, Secretary Solis does not seek to dismiss plaintiff's complaint for lack of jurisdiction on its face. Rather, Secretary Solis has supplemented the record with a declaration from Antonio A. Rios, Deputy Director for Federal Employees' Compensation, Office of Workers' Compensation Programs ("OWCP"), DOL. *See* Rios Declaration (docket no. 14-1). This declaration sets forth a timeline and documents relative to plaintiff's employment history and his applications for benefits both before and after his alleged termination date of December 16, 2010. Plaintiff did not file a response to this motion (either in the form of legal argument or counter-

5

affidavit). Accordingly, the court may consider the uncontroverted Rios Declaration, as necessary, to resolve factual disputes concerning jurisdiction.

### B. FECA violation

#### 1. Plaintiff's employment, injury, termination and claims for lost compensation filed with the OWCP

##### a. The July 21, 2009 claim

On July 21, 2009, OWCP received a form CA-1, "Notice of Traumatic Injury and Claim for Compensation/Continuation of Pay" from plaintiff, stating that plaintiff had injured his knee on July 17, 2009, while in the performance of duty as a "U.S. Border Patrol." Rios Declaration at ¶ 2. Plaintiff stopped working on July 17, 2009, underwent surgery on July 25, 2009, and returned to light, full-time duty on October 11, 2009. *Id.* at ¶ 3. In a letter dated August 7, 2009, OWCP accepted plaintiff's claim as "fracture, patella, closed, right []." *Id.* at ¶ 4.

##### b. The October 19, 2009 claim

On October 19, 2009, OWCP received a form CA-7, "Claim for Compensation" from plaintiff, in which he requested compensation for the period of September 14, 2009 through October 11, 2009. *Id.* at ¶ 5. On February 4, 2010, OWCP received an amended form CA-7, in which plaintiff requested compensation for the period of September 1, 2009 through October 11, 2009. *Id*

OWCP paid plaintiff temporary total disability compensation in the amount of $2,648.41 for the period of September 1, 2009 through October 23, 2009. *Id.* at ¶ 6. OWCP also paid almost $23,000.00 in medical bills associated with his accepted condition. *Id.*

### c. Plaintiff's termination

DHS terminated plaintiff's employment on or about December 14, 2010. *Id.* at ¶ 7. On December 20, 2010, OWCP received another form CA-7 from plaintiff, in which plaintiff requested compensation for wages lost during the period of December 15, 2011 through December 31, 2011 [sic]. *Id.* The attachments to the affidavit reflect that claim for compensation sought lost wages from December 15, 2010 to December 31, 2011. *See* Form CA-7 (docket no. 14-1 at p. 43). In a letter dated January 4, 2011, OWCP requested that plaintiff provide medical documentation demonstrating that the claimed days of wage loss were related to his accepted condition, and gave him 30 days to supply the information. *Id.* at ¶ 8. On January 25, 2011, OWCP received the same letter via returned mail. *Id.* On February 8, 2011, OWCP again mailed the letter after obtaining plaintiff's updated address. *Id.*

### d. OWCP's July 7, 2011 decision

In a decision dated July 7, 2011, OWCP denied plaintiff's request, stating that he failed to provide sufficient medical evidence to support his claim. *Id.* at ¶ 9. In this decision, OWCP noted that the available medical evidence included a September 1, 2010 report from plaintiff's doctor "indicating that his fracture was healed," and a September 20, 2010 note from plaintiff's doctor "authorizing him to return to work without any duty restrictions." *Id.* The OWCP decision also provided plaintiff with notification of his full appeal rights. *Id.* As of November 15, 2012 (the date of the Rios Declaration), plaintiff's case filed contained no indication that he exercised his right to further administrative review of his claim. *Id.* at ¶ 10. In this regard, plaintiff "had 30 calendar days after the date of decision to request a hearing, one calendar year to request

reconsideration, and 180 days to request review before the Employee Compensation Appeals Board." *Id.*

### 2. Plaintiff claims under FECA, the Rehabilitation Act and the ADA

#### a. FECA

The undisputed record reflects that plaintiff was receiving workers' compensation benefits under FECA. While plaintiff alleged that his disability discrimination claims were brought pursuant to the Rehabilitation Act and the ADA, these claims arise from the alleged wrongful termination of those benefits under FECA. Accordingly, the court's will address plaintiff's claims within FECA's statutory and regulatory framework.

FECA establishes a comprehensive compensation scheme under which federal employees or their survivors receive benefits, regardless of fault, for employment-related injuries or deaths. *See* 5 U.S.C. § 8101 *et seq.* Under FECA, "an employee with a job-related injury is entitled to compensation regardless of her or his ability to work, and, as such, employer agencies make every effort to find work within the limited-duty employee's restricted capabilities." *Ensley-Gaines v. Runyon*, 100 F.3d 1220, 1222 (6th Cir. 1996). The Secretary of Labor has authority to administer and decide all questions arising under FECA, *see* 5 U.S.C. § 8145, as well as prescribe rules and regulations necessary for enforcement of the Act, *see* 5 U.S.C. § 8149. The Secretary of Labor has delegated this authority to the Director of OWCP, who is responsible for the administration and implementation of FECA. *See* 20 C.F.R. § 10.1 (providing in part that "the responsibility for administering the FECA, except for 5 U.S.C. 8149 as it pertains to the Employees' Compensation Appeals Board, has been delegated to the Director of the Office of Workers' Compensation Programs (OWCP)"). FECA also provides an administrative appeal process to

contest an OWCP claims decision. This process includes: (1) within 30 calendar days, request a hearing before an OWCP hearing representative or request that the representative review the written record (5 U.S.C. § 8124(b)(1), 20 C.F.R. §§ 10.615-622); (2) request reconsideration within one calendar year (5 U.S.C. § 8128, 20 C.F.R. § 10.606-608); or (3) within 180 days, file an appeal with the Employees' Compensation Appeals Board ("ECAB") (20 C.F.R. § 501.3).

It is well established that FECA "provides the exclusive remedy for *all* damages arising out of a discrete personal injury" which kills or disables a federal employee. *Saltsman v. United States*, 104 F.3d 787, 789-90 (6th Cir. 1997) (emphasis in original).

> FECA's exclusive liability provision was enacted in substantially its present form in 1949. FECA Amendments of 1949, sec. 201, 63 Stat. 861 (enacting FECA § 7(b)) (currently codified at 5 U.S.C. § 8116(c)). It was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity. In enacting this provision, Congress adopted the principal compromise - the "quid pro quo" - commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.

*Lockheed Aircraft Corporation v. United States*, 460 U.S. 190, 193-94 (1983).

The Secretary of Labor's decision under FECA is not appealable to a court. In this regard, 5 U.S.C. § 8128 ("Review of award"), provides in pertinent part that

> The action of the Secretary [of Labor] or his designee in allowing or denying a payment under this subchapter is --
>
> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
>
> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

9

5 U.S.C. § 8128(b). In summary, "FECA contains an 'unambiguous and comprehensive' provision barring any judicial review of the Secretary of Labor's determination of FECA coverage" citing 5 U.S.C. § 8128(b). *Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 90 (1991).

The Sixth Circuit has recognized this limitation created by § 8128(b), having stated that FECA determinations by the OWCP "are simply not subject to judicial review." *Owens v. Brock*, 860 F.2d 1363, 1367, 1369 (6th 1988) (holding that FECA proceedings were not adversary adjudications subject to the fee provisions of the Equal Access to Justice Act (EAJA) and "that Congress intended to preclude review of administrative denials of EAJA petitions in FECA cases"). Despite the "unambiguous and comprehensive" language of § 8128(b), the Sixth Circuit noted in *Owens* that other courts have found two exceptions to the FECA judicial review prohibition, observing that "[e]xcept for cases alleging that the Secretary violated a claimant's constitutional rights or exceeded the scope of his congressional mandate, courts have unanimously held that section 8128(b) prohibits judicial review of FECA benefit determinations." *Id.* The government takes inconsistent positions with respect to whether the Sixth Circuit adopted the two exceptions noted in *Owens*. While the government states that a constitutional violation is a "clear exception" allowing judicial review under § 8128(b), the government contends that an act of the Secretary which exceeds the scope of his congressional mandate is not an exception to judicial review, because *Owens* reference to that exception is mere dictum. *See* Defendant's Brief at p. 8 and fn. 8. Contrary to the Secretary's position, it appears to the court that both of the statements were dicta, because the Sixth Circuit decided *Owens* without adopting either of the exceptions.

However, even if the exceptions noted in *Owens* exist, these exceptions are not at issue in this action. Here, plaintiff seeks court review of one or more determinations made by the

10

OWCP pursuant to FECA, by mounting a collateral attack on the OWCP determinations as violative of the Rehabilitation Act and the ADA. Plaintiff's complaint did not allege that OWCP's decision to terminate his workers' compensation benefits violated a constitutional right or that Secretary Solis exceeded the scope of her congressional mandate. Accordingly, even if an exception to FECA preclusion existed as set forth in *Owens*, plaintiff failed to allege such an exception in his complaint.

### b. Plaintiff's ADA claim

Assuming, arguendo, that plaintiff was not barred from contesting the benefits decision under § 8128(b), he still could not assert an ADA claim against defendant Solis because "[t]he Rehabilitation Act, not the Americans with Disabilities Act (ADA), constitutes the exclusive remedy for a federal employee alleging disability-based discrimination." *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007). Accordingly, plaintiff's ADA claim should be dismissed.

### c. Plaintiff's Rehabilitation Act claim

Plaintiff's Rehabilitation Act claim also fails. "A frustrated FECA claimant cannot secure judicial review of a FECA compensation decision by claiming that the Rehabilitation Act entitles her to accommodation in performing an alternative position approved by the Department of Labor when the claim is predicated upon the same illness or injury that gave rise to the Department of Labor's initial decision." *Meester v. Runyon*, 149 F.3d 855, 857 (8th Cir. 1998). A Rehabilitation Act claim challenging a decision to terminate worker's compensation benefits under FECA is nothing more than a collateral challenge which is precluded by FECA. *See Stone v. Chao*, 284 F Supp2d 241, 245-46 (D. Mass. 2003). *See also Luellen v. Henderson*, 54 F. Supp.2d 775, 778-83 (W.D. Tenn. 1999) ("decisions concerning the suitability of federal agency job offers to partially disabled employees have been exclusively committed to the Secretary of Labor under the FECA and

cannot be collaterally attacked or reviewed under the Rehabilitation Act"); *Rogers v. Department of Labor*, 607 F. Supp.2d 697, 698-99 (N.D. Cal.1985) (the plaintiff could not use the Privacy Act of 1974, 5 U.S.C. § 552a, as a "skeleton key" to re-open an unfavorable OWCP decision). *See also, Woods v. Runyon*, No. 94-6520, 1995 WL 496655 (6th Cir. Aug. 17, 1995) (court found that "OWCP determinations of law and fact regarding compensation for federal disability status are not reviewable" under 5 U.S.C. § 8128(b) and rejected the plaintiff's attempt to collaterally attack the validity of a job offer under the OWCP). Accordingly, plaintiff's Rehabilitation Act claim should be dismissed.

### 3. Other claims identified by Secretary Solis

Secretary Solis also seeks dismissal of plaintiff's claims brought under 42 U.S.C. § 1983 as well as any claims brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* As discussed in § I, *supra*, plaintiff's § 1983 claim is alleged in Count II and directed against Secretary Napolitano only. Because the § 1983 claim is not alleged against Secretary Solis, it is not before this court in Secretary Solis' pending motion for dismissal. Similarly, plaintiff's complaint does not allege that Secretary Solis violated the FTCA. Therefore, it is unnecessary for the court to address these arguments.[1]

---

[1] Even if these claims were before the court, they would fail. First, "[t]he federal government and its officials are not subject to suit under 42 U.S.C. § 1983." *Franklin v. Henderson*, 15 Fed.Appx. 205, 207 (6th Cir. 2001). Second, "the courts have no jurisdiction over FTCA claims where the Secretary determines that FECA applies." *Southwest Marine, Inc.*, 502 U.S. at 90 (internal citations omitted).

### III. Recommendation

For the reasons set forth above, I respectfully recommend that Secretary Solis' motion to dismiss for lack of jurisdiction (docket no. 13) be **GRANTED** and that she be **DISMISSED** from this action.


Dated: June 18, 2013				/s/ Hugh W. Brenneman, Jr.
						HUGH W. BRENNEMAN, JR.
						United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).